UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ROBERT D. SANGO,

    Plaintiff,

v.                                                          Case No. 2:15-CV-136
                                                                HON. GORDON J. QUIST

JAMES LeCLAIRE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert D. Sango, an inmate currently confined by the Michigan Department of Corrections (MDOC), filed this *pro se* civil rights action on October 5, 2015, pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No. 1. Plaintiff sues the following Defendants: James LeClaire (Assistant Resident Unit Supervisor, "ARUS"), Todd Bastian (Corrections Officer), Thomas LaPlante (Grievance Coordinator), and Keith Snyder (Chaplain). Plaintiff seeks declaratory relief and punitive damages.

Plaintiff claims that Defendants violated Plaintiff's first Amendment right to be free from retaliation and his Eighth Amendment rights when Defendants failed to protect him. Defendants filed a motion for summary judgment based solely on exhaustion (ECF No. 19) on May 26, 2016. Plaintiff filed a response on June 7, 2016. ECF No. 22. Defendants did not file a reply. The matter is now ready for a decision.

The following are the events in question viewed in the light most favorable to Plaintiff. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994) (noting any direct evidence offered by Plaintiff in response to a

summary judgment motion are accepted as true)). On August 3, 2015, Plaintiff appealed a grievance because Defendant LeClaire said he interviewed Plaintiff on that grievance at Step I, but he never did. PageID.2. In researching this grievance, Defendant LaPlante spoke to Defendant LeClaire on August 3, 2015, and told Defendant LeClaire that Plaintiff's appeal said Defendant LeClaire lied. PageID.2. Later that day, in retaliation for Plaintiff's appeal, Defendant LeClaire wrote a Notice of Intent (NOI) requesting that Plaintiff be taken off his religious diet based on a misconduct that was written on July 11, 2015 (alleging that Plaintiff violated his religious diet). PageID.2. Defendant Snyder did not honor Defendant LeClaire's NOI. PageID.2.

On August 31, 2015, Defendant LeClaire contacted Defendant Snyder and complained about Defendant LeClaire's decision not to honor Defendant LeClaire's request to take Plaintiff off of his religious diet based on Plaintiff's violation of his diet. PageID.2. After this conversation, Defendant Snyder granted the NOI and took Plaintiff off of his religious diet. PageID.2.

On August 28, 2015, while Plaintiff was sleeping, Defendant LeClaire came to Plaintiff's cell with a stack of grievances and left when he saw Plaintiff sleeping. PageID.3. Plaintiff woke up and told Defendant LeClaire to come back, but he did not. PageID.3. Later that day, unnamed staff told Plaintiff to pack his belongings because he was being moved. PageID.3. The next day, another inmate told Plaintiff that he was being moved because Plaintiff had been filing lawsuits and grievances. PageID.3.

Another inmate later told Plaintiff that Defendant Bastian had been pressuring another inmate (Renum) to stab Plaintiff, and that Defendant LeClaire moved Plaintiff so that it would be easier for Renum to stab him. PageID.3. Renum told Plaintiff that he was going to

listen to Defendant Bastian because Defendant Bastian had threatened to lie to other prisoners and tell them that Renum was having sexual relations with another prisoner and create a misconduct report to support that claim if he did not follow Defendant Bastian's orders. PageID.3.

Finally, because Plaintiff fears for his life, he told the gang leaders in prison that he would pay them to not hurt him. PageID.4. However, Defendant LeClaire gave Defendant Bastian a copy of Plaintiff's account statements (showing Plaintiff was indigent), and Defendant Bastian then gave these statements to the gang leaders. PageID.4.

Based on these occurrences, Plaintiff asserts that Defendants violated his First and Eighth Amendment rights. ECF No. 1. Plaintiff seeks legal redress before this Court for these alleged violations of his constitutional rights.

Presently before the Court is Defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered

by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad*, 379 F.3d at 416 (citing *Adams*, 31 F.3d at 382). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Notably, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court could not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff's claims against Defendants raise issues under the First and Eighth Amendment. Defendants' sole argument in their motion for summary judgment is that Plaintiff did not exhaust his administrative remedies with regard to these claims, meaning Plaintiff's present claims should be dismissed.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action under 42 U.S.C. § 1983 must exhaust his available administrative remedies. A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter v. Nussle*, 534 U.S. 516, 520 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to exhaust administrative remedies, prisoners must complete the administrative

review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 217-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The Supreme Court held in *Woodford* that the PLRA exhaustion requirement requires "proper exhaustion." "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Woodford*, 548 U.S. at 90-95. Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred. A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones*, 549 U.S. at 212-216.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control ECF No. 20-1 at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

Notably, an inmate must exhaust his or her grievances through Step III before filing a civil suit. *See Porter*, 534 U.S. at 524 ("[S]tate prisoners must exhaust administrative processes prior to instituting a § 1983 suit."); *see also Jones*, 549 U.S. at 199 (citing 42 U.S.C. § 1997e(a)) ("The Prison Litigation Reform Act . . . requires prisoners to exhaust prison grievance procedures before filing suit."); *Lyons-Bey v. Curtis*, 30 Fed. App'x 376, 378 (6th Cir. 2002) ("Under § 1997e(a), a prisoner must exhaust all of his available administrative remedies before filing a § 1983 action in federal court . . . ."). A prisoner may "not exhaust these remedies during the pendency of the action." *Lyons-Bey*, 30 Fed. App'x at 378 (citing *Freeman*, 196 F.3d at 645).

According to the MDOC Prisoner Step III Grievance Report, Plaintiff filed twenty

grievances from August 3, 2015 (when the events giving rise to this action began), to October 5, 2015 (when he filed this lawsuit). PageID.112-128. Defendants provided the Court with copies of the twenty grievances. ECF No. 20-2.

Grievance AMF-15-08-1819-17b indicates that Plaintiff appealed a Step I grievance because Defendant LeClaire had said that he interviewed Plaintiff at Step I, but he did not. PageID.160. In addition, it states that in reviewing the appeal, Defendant LaPlante told Defendant LeClaire about Plaintiff's reason for his grievance appeal, which led Defendant LeClaire to write a false NOI indicating that Plaintiff should be taken off of his religious diet. PageID.160. Notably, however, Plaintiff did not exhaust this grievance until March 8, 2016, and he filed this action on October 5, 2015, which means Plaintiff did not properly exhaust this grievance. *See Freeman*, 196 F.3d at 645 ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed.").

Grievance AMF-15-09-2101-20e states that Defendant Snyder (referenced in the grievance as the "Chaplain") took Plaintiff off his religious diet because Plaintiff was found guilty of an NOI. PageID.156. Plaintiff asserted that he was never interviewed by the Chaplain regarding this NOI or given a hearing. PageID.156.  While this claim raises issues within Plaintiff's complaint, it was not exhausted through Step III until March 22, 2016. Because Plaintiff filed his lawsuit on October 5, 2015, this grievance was not properly exhausted. *See Freeman*, 196 F.3d at 645.

Grievance AMF-15-09-2068-03h raises claims of retaliation against Officers Desselier and Haatajah. PageID.136. Because neither of these officers are Defendants in this

case, this grievance is irrelevant.

Grievance AMF-15-09-2215-17a raises a claim of retaliation against Defendant Bastian and Officer Desselier. PageID.132. Specifically, it states that Defendant Bastian did not give Plaintiff a razor when he asked for one because Plaintiff had filed a civil suit against him. PageID.132. Because this specific claim of retaliation is not one of the claims raised in this suit, this grievance does not apply to this case.

Grievance AMF-15-08-1946-17i raises claims against Officers Joyal. PageID.176. Because this officer is not a party to this case, this grievance is irrelevant.

Grievance AMF-15-08-1820-17a raises a retaliation claim against Officer Desselier. Because this officer is not a Defendant in this case, this grievance is irrelevant.

Grievance AMF-15-08-2049-28j states that Defendant LeClaire went to Plaintiff's cell to interview him about several Step I grievances, but Plaintiff was sleeping. PageID.168. When Plaintiff woke up and saw Defendant LeClaire, he asked Defendant LeClaire to come back but he did not. PageID.168. While the substance of this grievance is raised in Plaintiff's complaint, it fails to state a claim because prisoners do not have a constitutional right to an effective grievance procedure. *See Argue v. Hofmeyer,* 80 Fed. App'x 427, 430 (6th Cir. 2003) ("[T]here is no inherent constitutional right to an effective prison grievance procedure."). Therefore, I recommend that this claim be denied for failure to state a claim.

Grievance AMF-15-08-2048-28j states that Defendant LeClaire lied on several grievances at Step I when he said that Plaintiff refused to be interviewed on those grievances. PageID.164. Plaintiff appealed the denial of his Step I grievance and stated that Defendant LeClaire was "making obviously false statements on 4 (now 7) grievances." PageID.162. While

this substance of this grievance is raised in Plaintiff's complaint, prisoners do not have a constitutional right to an effective grievance procedure. *See Argue,* 80 Fed. App'x at 430 ("[T]here is no inherent constitutional right to an effective prison grievance procedure."). Thus, I recommend that this claim be denied for failure to state a claim.

Grievance AMF-15-08-1863-11c indicates that unnamed MDOC staff stopped giving grievances to prisoners to fill out because Plaintiff filed so many. PageID.192. Because this issue is not raised in Plaintiff's complaint, this grievance is inapplicable to this case.

Grievance AMF-15-08-1969-01i states that Officer Tribley was retaliating against Plaintiff. PageID.188. Defendant LeClaire reviewed the grievance at Step I, and he indicated that he interviewed Plaintiff on this grievance. PageID.188. Plaintiff appealed stating that he was not interviewed on the grievance as Defendant LeClaire indicated. PageID.187. This issue was raised in Plaintiff's complaint. However, because Plaintiff's complaint relating to this issue indicates that the event took place on August 3, 2015, and the grievance indicates a date of August 16, 2015, this grievance does not relate to the issue Plaintiff raised in his complaint. Therefore, this grievance does not apply to the claim Plaintiff raised against Defendant LeClaire in his complaint.

Grievance AMF-15-07-1528-17a raises a claim against Defendant Bastian for possibly attempting to poison Plaintiff. PageID.184. Because Plaintiff does not raise the issue of being poisoned in his complaint, this grievance is irrelevant.

Grievance AMF-15-08-1864-03a raises a claim with regard to excessive heat in the prison cells. PageID.180. Because this issue is not one that Plaintiff raised in his complaint, this grievance is inapplicable.

Grievance AMF-15-08-1875-28j indicates that Shane Place was improperly denying Plaintiff's Step II grievances. PageID.196. Because Mr. Place is not a Defendant in this case, this grievance is irrelevant.

In grievance AMF-15-08-1947-03d, Plaintiff raises a claim regarding poor ventilation and heat in the prison cells. PageID.200. Plaintiff appealed this Step I denial, claiming he was not interviewed at Step I by Defendant LeClaire as indicated on the grievance. PageID.198. Plaintiff raised the issue of Defendant LeClaire lying about interviewing him on a Step I grievance in his complaint. However, he made this appeal on August 31, 2015, and the appeal Plaintiff references in his complaint took place on August 3, 2015. PageID.198. As a result, this grievance does not apply to Plaintiff's present claims.

Grievance AMF-15-07-1654-26i raises a claim against Officer Hutha. PageID.204. Because this officer is not a party to this action, this grievance is irrelevant.

Grievance AMF-15-07-1585-17a raises a claim against Officer Parrish. Because this officer is not a party to this action, this grievance is irrelevant.

Grievance AMF-15-07-1653-17i raises issues regarding the extreme heat in the prison cells. PageID.220. Defendant LeClaire reviewed this grievance at Step I and said he interviewed Plaintiff. PageID.220. Plaintiff appealed this Step I denial, saying he was not interviewed by Defendant LeClaire. PageID.218. This appeal took place on July 31, 2015, meaning it is not the same appeal Plaintiff referred to in his complaint (as that appeal took place on August 3, 2015). PageID.218. Therefore, this grievance is irrelevant to Plaintiff's present action.

Grievance AMF-15-07-1652-27e raises claims against Officers Joyal and Hutha.

PageID.216. Because these officers are not parties to this action, this grievance is irrelevant.

Grievance AMF-15-07-1672-17a raises a claim against Officer VanWagner, which Defendant LeClaire reviewed and stated that Plaintiff was interviewed regarding this grievance. PageID.212. While Plaintiff appealed this denial because Defendant LeClaire did not interview him, this appeal took place on July 31, 2015 (while the appeal against Defendant LeClaire that he raised in the complaint took place on August 3, 2015).  PageID.210. As a result, this grievance does not apply to Plaintiff's present action.

Grievance ICF-14-07-0631-01z did not take place at the Baraga facility. As a result, this grievance does not apply to Plaintiff's case because Plaintiff's claims arise from incidents at the Baraga facility. *See* ECF No. 1.

Upon review of Plaintiff's nine grievances, it is clear that none of the twenty grievances that Plaintiff filed during the relevant time frame apply to this case. Therefore, despite the Court's obligation to construe handwritten *pro se* documents liberally, I recommend that Plaintiff's claims against Defendants LeClaire, Bastian, LaPlante, and Snyder be **DISMISSED**. Fed. R. Civ. P. 56; *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (stating that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and will only be dismissed if the claim undoubtedly contains no facts to support its request for relief).

In light of the foregoing, this Court concludes that Defendants' Motion for Summary Judgment (ECF No. 19) should be **GRANTED** and Plaintiff's case should be **DISMISSED with PREJUDICE**.

**NOTICE TO PARTIES**: Objections to this Report and Recommendation must

be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); W.D. MICH. LCIVR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   August 1, 2016                           /s/ Timothy P. Greeley
                                                                    TIMOTHY P. GREELEY
                                                                    UNITED STATES MAGISTRATE JUDGE